UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RICKEY A. BEAVER,<br><br>  Plaintiff,<br><br>  v.<br><br>CITY OF FEDERAL WAY, *et al.*,<br><br>  Defendants. | CASE NO. C05-1938-MJP-JPD<br><br>REPORT AND RECOMMENDATION |

### INTRODUCTION AND SUMMARY CONCLUSION

Plaintiff is a state prisoner who is currently confined at the Western State Hospital at Steilacoom, Washington. He brings this action under 42 U.S.C. § 1983 seeking monetary damages for alleged violations of his constitutional rights during his arrest for residential burglary in Federal Way, Washington. Plaintiff names two Federal Way Police officers and the City of Federal Way as defendants in this action. Defendants have filed a motion for summary judgment (Dkt. #21), to which plaintiff has filed a response. (Dkt. #26). Having considered the parties' briefs, and the balance of the record, the court concludes that defendants' motion for summary judgment should be granted in part and denied in part.

### FACTUAL BACKGROUND

On August 27, 2004, Federal Way Police officers Doug Laird and Heather Castro were dispatched to investigate a report of residential burglary. The residents of the house had seen a man

REPORT AND RECOMMENDATION
PAGE - 1

– later identified as plaintiff – pushing a shopping cart on the sidewalk in front of the house.  (Dkt. #22, Ex. C).  Later that day, when they saw the same shopping cart in their driveway, they suspected something was wrong.  (*Id.*)  Looking around the outside of the house, they discovered plaintiff emerging from a window.  When they confronted plaintiff, he took off running, and the residents called 911.  (*Id.*)

Officer Laird arrived on the scene and recognized plaintiff as someone he had encountered before.  (Dkt. #22, Ex. A).  It appeared to Officer Laird that plaintiff was "under the influence" because plaintiff was sweating and his veins were bulging.  (*Id.*)  Officer Laird described plaintiff as being approximately six feet tall, weighing at least 300 pounds, and having a muscular build.  (*Id.*)  However, an exhibit provided by plaintiff lists his height as 5' 11" and his weight as 220 pounds, at the time of his arrest.  (Dkt. #26, Ex. B).

Officer Laird ordered plaintiff to the ground but plaintiff ignored him and continued to run away.  (Dkt. #22, Ex. A at 1).  Officer Laird fired his Taser stun gun to stop plaintiff.[1]  (*Id.*)  The darts of the Taser struck plaintiff in his right shoulder and lower back, causing him to fall to the ground. Officer Castro arrived on the scene approximately 30 seconds after plaintiff fell.  (Doc. #23, Ex. A at 1).

Plaintiff attempted to get up.  Officer Laird fired the Taser again.  (Dkt. #22, Ex. A at 1).  Plaintiff fell onto his back.  Officer Laird told plaintiff to roll over onto his belly.  (*Id.*)  Officer Castro apparently issued a conflicting order to plaintiff, telling him to lay on his back.  (Doc. #23, Ex. A at 1).  Plaintiff rolled over on his side and attempted to get up again, and Officer Laird fired the Taser a third time.  (Dkt. #22, Ex. A at 1).  Plaintiff again fell to the ground but then would not move his hands out to the side, so Officer Laird fired the Taser again.  Again, plaintiff tried to rise

---

[1] The Taser stun gun has been described as follows: "The taser . . . is a device which fires two darts attached by wires.  When the darts are stuck into a subject and a button is depressed on the taser, the darts transmit a 50,000 volt charge of a low amperage.  This charge immobilizes most of the muscles of the subject usually causing her to collapse to the ground." *McKenzie v. City of Milpitas*, 1992 WL 19813 at *1 (9th Cir. 1992).

REPORT AND RECOMMENDATION
PAGE - 2

1  and Officer Laird fired the Taser a fifth time. Plaintiff remained on the ground but to get plaintiff to
2  place his hands in the proper position, Officer Laird had to fire the Taser again two or three times.
3  (*Id*.) Finally, Officer Castro was able to handcuff plaintiff and Officer Laird did not use the Taser
4  again. Plaintiff sustained a cut to his mouth and swelling over his eye when he fell after the initial
5  firing of the Taser. (*Id*. at 2).
6  Officer Castro checked plaintiff for weapons, apparently found none, and then transported
7  plaintiff to the hospital. He was found to have minor injuries with no broken bones. Plaintiff tested
8  positive for alcohol, marijuana and cocaine. (Dkt. #23, Ex. A at 2). Following his medical
9  examination, Officer Castro transported plaintiff to the King County Regional Justice Center where
10 he was booked on several charges. (*Id*.)
11 On January 31, 2006, plaintiff filed the instant civil rights action under 28 U.S.C. § 1983.
12 (Dkt. #8). Defendants filed their answer on March 31, 2006 (Dkt. #16), followed by a motion for
13 summary judgment on July 10, 2006. (Dkt. #21). Plaintiff filed an opposition on July 21, 2006
14 (Dkt. #26) and defendants filed a reply on August 4, 2006 (Dkt. #27). The matter is now ready for
15 review.

16 DISCUSSION

17 Plaintiff alleges in his civil rights complaint that Officer Laird used excessive force in
18 arresting him in violation of the Fourth Amendment. (Dkt. #8 at 3). Plaintiff also alleges that Officer
19 Castro failed to protect him against the excessive force used by Officer Laird. In addition, he contends
20 that both officers violated his Fourth Amendment rights by administering an involuntary drug test and
21 they violated his due process and equal protection rights by inflicting pain and suffering on him.
22 Finally, plaintiff alleges that the City of Federal Way should be liable for failing to properly train its
23 police officers in the use of Taser guns. (*Id*. at 4).
24 Defendants argue that plaintiff's claims must be dismissed because there are no genuine issues
25 of material fact and they are entitled to judgment as a matter of law. In addition, even if the police
26 officers committed a constitutional violation, defendants argue that they are entitled to qualified

REPORT AND RECOMMENDATION
PAGE - 3

1  immunity.

## Summary Judgment Standard

Summary judgment is proper only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). A reviewing court is required to draw all inferences in a light most favorable to the non-moving party. *Id*. at 248. Genuine disputes are those for which the evidence is such that a "reasonable jury could return a verdict for the nonmoving party." *Id*. Material facts are those which might affect the outcome of the suit under governing law. *Id*.

## Excessive Force

The Ninth Circuit Court of Appeals has articulated the following framework to analyze claims of excessive force during an arrest:

> We analyze excessive force claims in the arrest context under the Fourth Amendment's reasonableness standard. We balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake and *ask whether, under the circumstances, including the severity of the crime at issue, the suspect poses an immediate threat to the safety of the officers or others, or whether he is actively resisting arrest or attempting to evade arrest by flight.* The reasonableness inquiry is objective, without regard to the officer's good or bad motivations or intentions. We judge reasonableness from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight and allow for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.

*Billington v. Smith*, 292 F.3d 1177, 1184 (9th Cir. 2002) (footnotes and quotations omitted) (emphasis added).

Defendants argue that Officer Laird used reasonable force when he fired the Taser seven or eight times at plaintiff in order to restrain him. However, applying the standard set forth by the Ninth Circuit in *Billington*, and viewing the facts in the light most favorable to the non-moving party,

REPORT AND RECOMMENDATION
PAGE - 4

1   *i.e.*, plaintiff, the court finds that there is a genuine issue of fact as to whether the force was

2   excessive.  Notably, Officer Laird did not see plaintiff carrying a weapon of any kind during the

3   incident, nor did he have any reason to suspect that plaintiff had a weapon.  Thus, it does not seem

4   likely that plaintiff posed a threat to the safety of the officer, especially after plaintiff fell to the

5   ground.  Nor does it seem likely that plaintiff was seriously attempting to flee when he was

6   attempting to get off the ground.  It is even unclear whether plaintiff was actively resisting arrest or

7   whether he was merely confused and in pain from being repeatedly stunned by the Taser.

8   Accordingly, the court concludes that defendants' motion for summary judgment should be denied as

9   to plaintiff's claim of excessive force..

10                                                Failure to Protect

11          Plaintiff alleges that Officer Castro failed to protect him against the excessive force used by

12  Officer Laird.  Defendants argue that because Officer Laird's use of force was not excessive, Officer

13  Castro cannot be liable for her failure to intervene.  (Dkt. #21 at 15).  Liability under § 1983 for an

14  officer's failure to protect is based upon the officer's "deliberate indifference" to a serious threat to a

15  person's safety.  *See Farmer v. Brennan*, 511 U.S. 825, 833 (1994).   Here, Officer Castro's arrival

16  on the scene 30 seconds after Officer Laird first fired the Taser at plaintiff indicates that she

17  witnessed most of the incident.  In addition, Officer Castro candidly admits in the report that she filed

18  the day of the arrest that she "*told* officer Laird to taser [plaintiff] again, which he did."  (Dkt. #23,

19  Ex. A at 1) (emphasis added).  Thus, Officer Castro was not only aware that plaintiff was repeatedly

20  shot by Officer Laird's Taser, but she actively encouraged it.  Accordingly, there is a genuine issue

21  of fact as to whether she was deliberately indifferent to the serious threat to plaintiff's safety posed

22  by excessive use of the Taser.  Defendants are consequently not entitled to summary judgment on this

23  claim.

24                                                Involuntary Drug Test

25           Plaintiff contends that Officers Laird and Castro violated his Fourth Amendment rights when

26  they allegedly forced him at the hospital to undergo a test to screen for drugs.  Defendants' motion

REPORT AND RECOMMENDATION
PAGE - 5

1  for summary judgment on this ground should be granted. First, plaintiff has produced no evidence
2  showing that the officers required him to be tested for drugs. Second, even if they did require him to
3  take the test, they would have had justification for doing so, based on their observations of plaintiff's
4  erratic behavior. *See Thompson v. Souza*, 111 F.3d 694, 703 (9th Cir. 1997). Accordingly,
5  defendants' motion for summary judgment should be granted as to this claim.

6  <u>Due Process and Equal Protection</u>

7  Plaintiff contends that Officers Laird and Castro violated his rights under the Fourteenth
8  Amendment to due process and equal protection by inflicting pain and suffering on him. In order to
9  show that governmental action violates due process, plaintiff must show that the conduct complained
10 of is "so brutal and offensive to human dignity as to shock the conscience." *Vaughan v. Ricketts*, 859
11 F.2d 736, 742 (9th Cir. 1988) (internal quotations omitted). "[T]he Constitution does not guarantee
12 due care on the part of state officials; liability for negligently inflicted harm is categorically beneath
13 the threshold of constitutional due process." *County of Sacramento v. Lewis*, 523 U.S. 833, 849
14 (1998). To establish a violation of the Equal Protection Clause, plaintiff must present evidence of
15 discriminatory intent. *See Washington v. Davis*, 426 U.S. 229, 239-40 (1976).

16 Here is it clear that any suffering inflicted by Officers Laird and Castro was not so brutal as to
17 shock the conscience. While, as the court previously concluded, there is an issue of fact regarding
18 whether the use of the Taser was excessive, plaintiff has produced no evidence that the officers'
19 conduct was so egregious as to rise to the level of a due process violation. In addition, plaintiff has
20 not produced any evidence that the officers acted with discriminatory intent. Therefore, defendants
21 are entitled to summary judgment as to this claim.

22 <u>City of Federal Way</u>

23 Plaintiff contends that the City of Federal Way is liable under § 1983 for its failure to
24 properly train Officers Laird and Castro in the use of the Taser. *See City of Canton, Ohio, v. Harris*,
25 489 U.S. 378 , 387-88 (1989). However, plaintiff produces no evidence showing that the City of
26 Federal Way failed to properly train its police officers in the use of the Taser. Defendants have

REPORT AND RECOMMENDATION
PAGE - 6

1  provided, in their motion for summary judgment, evidence that Officer Laird received training in use
2  of the Taser. This evidence is not challenged by plaintiff. Accordingly, defendants' motion for
3  summary judgment should be granted as to this claim.

Qualified Immunity

Defendants argue in their summary judgment motion that even if the court finds that Officers Laird and Castro may have violated plaintiff's constitutional rights, they are entitled to qualified immunity. Qualified immunity protects § 1983 defendants performing discretionary functions from liability for civil damages so long as their conduct does not violate a clearly established constitutional or statutory right of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court clarified the test to be applied in evaluating claims of qualified immunity. The threshold inquiry in a qualified immunity analysis is whether the facts alleged, when taken in the light most favorable to the party asserting the injury, show that the defendant's conduct violated a constitutional right. *Id*. at 201. If the reviewing court concludes that no constitutional right was violated by the defendant's conduct, the court need not inquire further. *Id*. However, if the reviewing court concludes that a constitutional right was violated, the court must then determine whether the right was clearly established. *Id*. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. at 202.

As to Officers Laird and Castro, this court has concluded that substantial questions exist as to whether the conduct of those defendants violated plaintiff constitutional rights and, thus, the court must address the second prong of the qualified immunity analysis. Although no reported decision shares precisely the same facts as the case at bar, a review of the relevant case law shows that the law regarding excessive force was clearly established at the time of plaintiff's arrest.[2] The relevant

---

[2] The sole case relied upon by defendants is not only from outside the Ninth Circuit, but is factually distinguishable. In *Russo v. City of Cincinnati*, 953 F.2d 1036 (6th Cir. 1992), the Sixth

REPORT AND RECOMMENDATION
PAGE - 7

factors for determining the constitutionally permissible amount of force are whether "the suspect poses an immediate threat to the safety of the officers or others, or whether he is actively resisting arrest or attempting to evade arrest by flight." *See Billington v. Smith*, 292 F.3d 1177, 1184 (9th Cir. 2002).

Applying these factors to plaintiff's arrest, it seems clear that Officer Laird's use of the Taser seven or eight times against plaintiff, who was unarmed and on the ground, would not pass constitutional muster. In addition, Officer Castro's failure to protect plaintiff, and indeed, her encouraging of Officer Laird to fire the Taser at plaintiff, if true, also appears to transgress clearly established law. Therefore, it should have been clear to both officers that their conduct was unlawful. Accordingly, defendants fail to satisfy the second prong of *Saucier* and they are not entitled to qualified immunity in this action.

## CONCLUSION

For the foregoing reasons, the court recommends that defendants' motion for summary judgment be granted with respect to all of plaintiff's claims except his excessive force claim against Officer Laird and his failure to protect claim against Officer Castro. A proposed order accompanies this Report and Recommendation.

DATED this 1st day of September, 2006.

JAMES P. DONOHUE
United States Magistrate Judge

---

Circuit granted police officers qualified immunity after they used a Taser on a subject whom the officers knew to be a paranoid schizophrenic and who was armed with two knives. *Id.* at 1040. Here, Officers Laird and Castro did not know plaintiff to be dangerous nor was he carrying any weapons.

REPORT AND RECOMMENDATION
PAGE - 8